**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

C. W. HAYNES AND COMPANY,
INCORPORATED; FIRST CITIZENS
BANK AND TRUST COMPANY OF
SOUTH CAROLINA,
Plaintiffs-Appellants,

v.

MIDFIRST BANK, SSB, an Oklahoma
savings and loan association, as
assignee for collection and as agent
for the Government National

Mortgage Association,
Plaintiff-Appellee,

and

UNITED STATES OF AMERICA,
Defendant-Appellee,

and

GOVERNMENT NATIONAL MORTGAGE
ASSOCIATION,
Defendant.

No. 95-2515

MIDFIRST BANK, SSB, an Oklahoma
savings and loan association, as
assignee for collection and as agent
for the Government National
Mortgage Association,
<u>Plaintiff-Appellant,</u>

v.

C. W. HAYNES AND COMPANY,
INCORPORATED; FIRST CITIZENS                No. 95-2516
BANK AND TRUST COMPANY OF
SOUTH CAROLINA,
<u>Defendants-Appellees,</u>

and

UNITED STATES OF AMERICA;
GOVERNMENT NATIONAL MORTGAGE
ASSOCIATION,
<u>Defendants.</u>

Appeals from the United States District Court
for the District of South Carolina, at Columbia.
Joseph F. Anderson, Jr., District Judge;
J. Frederick Motz, Chief District Judge, sitting by designation.
(CA-93-1418-3-17, CA-93-1862-3-17)

Argued: April 4, 1996

Decided: May 31, 1996

Before MURNAGHAN and LUTTIG, Circuit Judges, and LAY,
Senior Circuit Judge of the United States Court of Appeals for the
Eighth Circuit, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

2

**COUNSEL**

**ARGUED:** Michael Wallace Tighe, CALLISON, TIGHE, ROBIN-SON & HAWKINS, L.L.P., Columbia, South Carolina, for Appel-lants. Richard B. Noulles, GABLE & GOTWALS, Tulsa, Oklahoma, for Appellee Midfirst Bank; Lisa Sheri Goldfuss, Trial Attorney, Torts Branch, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee United States. **ON BRIEF:** Louis H. Lang, CALLISON, TIGHE, ROBINSON & HAW-KINS, L.L.P., Columbia, South Carolina, for Appellants. Charles E. Carpenter, Jr., RICHARDSON, PLOWDEN, GRIER & HOWSER, Columbia, South Carolina, for Appellee Midfirst Bank. Frank W. Hunger, Assistant Attorney General, Paul F. Figley, Deputy Director, Torts Branch, Civil Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee United States.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Two consolidated cases have been brought to ascertain whether C. W. Haynes & Co. (Haynes) had rights superior to those of Mid-first Bank (Midfirst) and the Government National Mortgage Associa-tion (GNMA) in seventeen mortgage notes and the mortgages securing them, and whether the United States and GNMA were liable to Haynes in negligence under the Federal Tort Claims Act (FTCA). The district court held that GNMA, the principal of Midfirst, had become the notes' holder in due course and that the United States and GNMA were entitled to sovereign immunity. We affirm.

I.

Haynes, having agreed to sell twenty-one mortgages and related mortgage notes to the Inland Mortgage Corporation (Inland), deliv-

3

ered to Inland, before receiving payment therefor, the original mortgage notes and copies of unrecorded mortgage assignments for Inland's underwriting review. The notes were endorsed to Inland "without recourse." Each of the copies of the assignments was dated October 15, 1990, and bore a stamp, which stated:"Certified True Copy of Original to be Filed for Recording Upon Funding. C. W. Haynes and Company, Incorporated." In its cover letter to Inland, Haynes wrote:

> These documents are delivered to you for your examination and determination as to their compliance with relevant underwriting requirements and your decision as to their purchase.

> It is expressly understood that ownership of these documents, and the loans which they represent, will remain unchanged and will not pass to you until such time as these documents are approved by you for purchase, and funds for that purchase are received by us.

Inland rejected four of the twenty-one mortgages and returned the corresponding documents to Haynes. Without having paid Haynes for the remaining seventeen notes and mortgages, Inland placed them into a GNMA pool approximately two weeks after receiving them, and then delivered them, endorsed in blank, to Bank of America, one of GNMA's document custodians. A GNMA-guaranteed security backed by the notes and mortgages was then delivered to Inland for issuance. GNMA subsequently terminated Inland's status as an eligible issuer of GNMA-guaranteed securities and designated Midfirst as its agent to collect on and enforce the seventeen mortgages.

Because Inland never paid it for the notes and mortgages, Haynes has sought to invalidate their transfer to GNMA and Midfirst. Haynes also has claimed that GNMA behaved negligently by failing to revoke Inland's eligible-issuer status at an earlier date and by allowing a GNMA-guaranteed security backed by the seventeen mortgages to be issued.

II.

With respect to Haynes's claim to the notes and mortgages, the district court granted Midfirst's motion for summary judgment. The

4

court held that Haynes's claim was invalid because GNMA had become the notes' holder in due course when Inland delivered the mortgage documents to Bank of America and the security was delivered to Inland. Having reviewed the matter de novo, see Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995), we agree.

Under South Carolina law, which is controlling here, an instrument's holder in due course "takes the instrument free from all claims to it on the part of any person." S.C. Code Ann.§ 36-3-305(1) (Law. Co-op. 1977). "A holder in due course is a holder who takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." Id . § 36-3-302(1).

GNMA became the mortgage notes' holder when Inland delivered the notes to Bank of America to hold on GNMA's behalf. GNMA gave value for the mortgage notes when it delivered a GNMA-guaranteed security to Inland. GNMA took the mortgage notes in good faith: while GNMA might have been careless or negligent in its handling of Inland's submission, no evidence has been presented that suggests that GNMA or its agents behaved dishonestly. See id. § 36-1-201(19) (defining "good faith" as "honesty in fact in the conduct or transaction concerned").[1]

The question of notice is somewhat closer, though we find that GNMA did not have notice of Haynes's claim to the mortgage notes until well after it had become the notes' holder. Under South Carolina law, "[a] person has `notice' of a fact when (a) he has actual knowledge of it; or (b) he has received a notice or notification of it; or (c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists." Id. § 36-1-201(25). Contrary to Haynes's suggestion, the fact that an employee at the Federal Housing Administration had learned that Inland officials might be falsifying payment histories in documents being prepared concerning FHA insurance in no way put GNMA, a separate entity, on notice of Inland's misconduct in connection with GNMA pools.

_____

[1] Haynes has contended that GNMA failed to comply with its own regulations. Standing alone, though, such failure would reflect only upon the degree of care that GNMA exercised, and not upon its"honesty in fact."

Nor did the documents submitted by Inland put GNMA on such notice. The copies of the unrecorded mortgage assignments did indicate that they were indeed copies, and that the originals would be filed when payment had been received. GNMA was not inescapably led to conclude from those facts, though, that Haynes had never been paid. Indeed, as the district court found, GNMA could have concluded that, between the time Haynes placed the stamp on the documents and the time those documents were submitted to Bank of America, Inland had paid Haynes for the mortgages. The fact that GNMA did not conclude otherwise based upon Inland's failure to submit original copies of the assignments suggests that GNMA may have been careless in carrying out its duties; it does not suggest, though, that GNMA had notice of Haynes's claims. See 4 William D. Hawkland & Lary Lawrence, Uniform Commercial Code Series § 3-304:05, at 482, 484 (1994) (stating that, under the"preferable" and likely intended understanding of the phrase "reason to know" in § 1-201(25), a person "only has reason to know of a claim or defense where, from the facts of which he has knowledge, the only reasonable conclusion is that a claim or defense exists") (emphasis added).

Finally, contrary to Haynes's belief, GNMA and Inland were not sufficiently closely related to warrant application of the so-called close-connection doctrine.[2]

_____

[2] Professors White and Summers explain the origin of the close-connection doctrine as follows:

> In the days before the Federal Trade Commission abolished holder in due course status for consumer notes, courts often looked for ways to protect consumers from parties who apparently conformed to all of the requirements for a holder in due course. One particularly offensive problem was that presented by a parent and subsidiary corporation in which the subsidiary might sell shoddy goods to a consumer and then sell the negotiable paper to the parent. Technically, the parent was a holder in due course . . . . Under the "close connection" doctrine, the courts attributed the subsidiary's knowledge to the parent if the two were sufficiently closely connected.

2 James J. White & Robert S. Summers, Uniform Commercial Code § 17-7, at 172 (1995).

We therefore hold that the district court did not err when it granted summary judgment to Midfirst.**3**

III.

The district court held that, with respect to Haynes's negligence action, the United States and GNMA were entitled to sovereign immunity. We agree.

Congress has created numerous exceptions to the FTCA's conferral of subject matter jurisdiction in negligence actions against the federal government, one of which is the "discretionary function" exception: the FTCA does not confer subject matter jurisdiction over claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). To determine whether the discretionary function exception applies, we must first ask "whether the challenged conduct `involves an element of judgment or choice.'" Piechowicz v. United States, 885 F.2d 1207, 1211 (4th Cir. 1989) (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)). "[T]he discretionary function exception will not apply when a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow." Berkovitz, 486 U.S. at 536. Second, if the challenged conduct does indeed involve an element of judgment or choice, we must determine whether that conduct was grounded in "`considerations of public policy.'" Piechowicz, 885 F.2d at 1212 (quoting Berkovitz, 486 U.S. at 537). Moreover, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." United States v. Gaubert, 499 U.S. 315, 324 (1991).

Congress has conferred upon GNMA broad discretionary authority to administer the mortgage-backed security program. GNMA, for

_____

**3** Having so concluded, we need not consider Midfirst's contention on cross-appeal that we should adopt a uniform federal rule that would lead to a result favorable to Midfirst.

7

example, possesses the authority, "upon such terms and conditions as it may deem appropriate, to guarantee the timely payment of principal of and interest on such trust certificates or other securities as shall" be issued by a GNMA-approved mortgage lender. 12 U.S.C. § 1721(g)(1) (Supp. 1996) (emphasis added). The implementing regulations make clear that, if an eligible mortgage lender fails to meet any of the eligibility requirements, then GNMA " may withhold further commitments to guarantee securities until such time as the Association is satisfied that the mortgage lender has resumed business operations in compliance with such requirements." 24 C.F.R. § 390.3(g) (emphasis added). The regulations further state that GNMA "may . . . audit the books and examine the records of any issuer . . . bearing on compliance with the requirements of the Mortgage-Backed Securities Program." Id.§ 390.60 (emphasis added).

In light of that statutory and regulatory language, we find that GNMA's actions in the instant case involved "an element of judgment or choice." That is, we find that whether Inland continued to be eligible to issue GNMA-guaranteed securities was a matter committed largely to GNMA's discretion and that GNMA had the discretionary authority to decide what procedures to employ when determining whether Inland should be permitted to issue a security backed by the seventeen notes and mortgages. Moreover, GNMA's decisions concerning those matters involved the "exercise of policy judgment." Compare United States v. Varig Airlines, 467 U.S. 797, 819-20 (1984) ("When an agency determines the extent to which it will supervise the safety procedures of private individuals, it is exercising discretionary regulatory authority of the most basic kind. Decisions as to the manner of enforcing regulations directly affect the feasibility and practicality of the Government's regulatory program; such decisions require the agency to establish priorities for the accomplishment of its policy objectives by balancing the objectives sought to be obtained against such practical considerations as staffing and funding.").

We therefore hold that the discretionary function exception applies in the instant case and that the district court properly dismissed Haynes's negligence claim against the United States and GNMA.

8

IV.

The judgment of the district court is accordingly

<u>AFFIRMED</u>.

9