**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

PEGGY L. JOHNSON,
Plaintiff-Appellant,

v.                                                                           No. 98-1588

RADIO SHACK/TANDY CORPORATION,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Robert D. Potter, Senior District Judge.
(CA-96-255-3-P)

Submitted: January 29, 1999

Decided: March 10, 1999

Before MURNAGHAN, NIEMEYER, and TRAXLER,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Geraldine Sumter, FERGUSON, STEIN, WALLAS, ADKINS,
GRESHAM & SUMTER, P.A., Charlotte, North Carolina, for Appel-
lant. James B. Spears, Jr., John D. Cole, HAYNSWORTH, BALD-
WIN, JOHNSON & GREAVES, L.L.C., Charlotte, North Carolina,
for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Peggy Johnson appeals from the district court's order granting summary judgment to her employer, Radio Shack, and dismissing her civil action in which she alleged various claims of employment discrimination under federal and state law. On appeal, Johnson attacks only the district court's disposition of two claims of discriminatory failure to promote. Finding no error, we affirm.

In 1984, Johnson, an African-American female, was hired by Radio Shack as a part-time salesperson at their North Carolina National Bank Plaza Overstreet Mall store in the Charlotte, North Carolina region.* In 1985, Johnson was promoted to a full-time position at the Park Road Shopping Center store and then to manager-in-training in 1986 at the Eastland Mall store. In 1987, Johnson was promoted to manager at the Cotswald Mall store and then to senior manager at the Independence Boulevard store. In April 1992, District Manager Steve Bunker recommended that Johnson be transferred to the Midtown Square store, a small store with a smaller sales staff, because of Johnson's unsatisfactory performance in sales and in management of sales associates.

_____

*In each region, Radio Shack operates stores of various sizes reflecting physical sales space, volume of sales, and numbers of sales associates working in the store. A region is operated by a regional manager who supervises district managers, store managers, managers-in-training, sales associates, and part-time sales associates. The district manager is responsible for making recommendations to the regional manager for transfers or promotions among the store manager positions. There are no actual postings for job opportunities. Store managers begin in smaller stores with smaller sales volumes and sales staffs and progress to larger volume stores with larger sales staffs.

2

In February 1993, Johnson sought the manager position at the Southpark Mall store--a larger store than the one she was managing. Bunker instead selected Chris Layton, a white male, based on Layton's demonstrated excellence in people management skills, knowledge of computers (a key product at the Southpark Mall store), and the fact that he had a Ph.D. Bunker stated that he did not select Johnson because she had been transferred less than a year before for unsatisfactory performance. Johnson had not demonstrated to Bunker's satisfaction people management skills in the areas of recruiting, training, developing and motivating sales staff, which Bunker felt was necessary in managing a large store. Furthermore, Bunker did not believe Johnson wanted to move to another store at that time because she told him she wanted to remain at the Midtown Square store because she was winning a sales contest there and did not want to move until after the contest.

In 1996, Johnson expressed interest in the manager position at the Rock Hill Galleria store and discussed the opportunity with District Manager John Hensley. Hensley selected Frank Goodbread, a white male, based on Goodbread's demonstrated skills in managing the Eastland Mall store and its sales staff, his knowledge in computers, and his previous experience in managing a larger store in New York. Hensley stated that Johnson did not demonstrate the necessary management skills in the areas of recruiting, training, and developing sales associates. At that the time, Hensley offered Johnson the manager position at the Eastland Mall store, which was larger than the Midtown Square store but smaller than the Rock Hill Galleria store. Johnson declined the offer because she wanted to continue working on her people management skills and stated that she did not have the energy to manage the Eastland Mall store.

After exhausting administrative remedies, Johnson filed a complaint with the district court asserting that Radio Shack disciplined, harassed, demoted, and denied promotion on account of her race. The court granted Radio Shack's motion for summary judgment, and Johnson timely appealed, raising only her failure to promote claims.

This court reviews a grant of summary judgment de novo. See Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995). Summary judgment is appropriate when a non-moving party fails to estab-

3

lish, by sworn evidence, an essential element of the case. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

To avoid summary judgment in a Title VII action, a plaintiff must establish a prima facie case of discrimination. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). To establish a prima facie case for discriminatory failure to promote, a plaintiff must show that: (1) she is a member of a protected class; (2) she applied for the position in question; (3) she was qualified for the position; and (4) she was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. See Carter v. Ball, 33 F.3d 450, 458 (4th Cir. 1994). Once a prima facie case is established, the burden shifts to the defendant to produce evidence that shows some legitimate, nondiscriminatory reason for their action. Id. at 253. If the defendant meets this burden, then the plaintiff must prove by a preponderance of the evidence that the employer's reasons are pretext for discrimination. Id.

In this case, the district court assumed for purposes of summary judgment that Johnson established a prima facie case of discriminatory failure to promote. The court concluded, however, that she failed to establish that Radio Shack's proffered reasons for not promoting her were pretextual and that the actual reason for the failure to promote was racial animus. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993). We agree.

Johnson fails to proffer any probative evidence that her race was a factor in the decisions not to promote her. Johnson admitted that neither Bunker nor Hensley ever commented on her race. The record further discloses that both Bunker and Hensley promoted several African-American store managers. In addition, there is no objective evidence that Johnson was more qualified for the store manager positions at issue than were the white males who were selected. Thus, Johnson failed to establish a material factual dispute regarding whether Radio Shack denied promotions to her because of her race.

Accordingly, we affirm the district court's order. We grant Radio Shack's motion to submit the appeal on the briefs and dispense with oral argument because the facts and legal contentions are adequately

4

presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

5