Shirley S. **HENSON**, Plaintiff–Appellant,

v.

**LIGGETT GROUP, INCORPORATED,** d/b/a Liggett & Myers Tobacco Company, Inc., Defendant–Appellee.

No. 94–2440.

United States Court of Appeals, Fourth Circuit.

Argued April 4, 1995.

Decided Aug. 9, 1995.

**ARGUED:** Stewart Wayne Fisher, Glenn, Mills & Fisher, P.A., Durham, NC, for appellant. John R. Long, Newsom, Graham, Hedrick & Kennon, P.A., Durham, NC, for appellee. **ON BRIEF:** Joel M. Craig, Newsom, Graham, Hedrick & Kennon, P.A., Durham, NC, for appellee.

Before ERVIN, Chief Judge, and RUSSELL and LUTTIG, Circuit Judges.

Affirmed by published opinion. Chief Judge ERVIN wrote the opinion, in which Judge RUSSELL and Judge LUTTIG joined.

## OPINION

ERVIN, Chief Judge:

Shirley S. Henson appeals from the district court's grant of summary judgment on her employment discrimination claims against her employer, Liggett Group, Inc., ("Liggett") under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq.*, the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, and the North Carolina Equal Employment Practices Act, N.C.G.S. § 143–422.1. Because we find that the employer is entitled to judgment as a matter of law, we affirm the district court's grant of summary judgment.

## I.

Henson was a Liggett employee from 1975 through 1992. Her last position with the company was a clerical job in the Freight Payables Department, in which she processed and paid invoices from freight companies and warehouses. In 1986, Bennett Le-Bow purchased Liggett and became chairman. Five years later, Liggett began restructuring several departments, as well as the company's retirement plans. In March 1992, senior management at Liggett—including the president, vice-presidents, general counsel, director of logistics, and Lebow—met to discuss the company's financial situation. The group, in conjunction with their discussions about downsizing, acknowledged that downsizing might possibly effect age discrimination claims.

Henson was notified on May 14, 1992, that her job would be eliminated and her department outsourced, i.e., contracted to an independent contractor. Plaintiff was fifty years old at the time, five years away from being able to retire with full benefits. If Henson elects to receive retirement benefits before she reaches age sixty-five, she will receive approximately forty percent of the full amount. Henson is still eligible to receive her fully vested benefits at age sixty-five.

After being informed that her position would be eliminated, Henson spoke with various management level employees about other possible job openings at Liggett in an attempt to remain employed at the company until her retirement benefits fully vested at age 55. She spoke with the Personnel Manager, Sue Latta, and the Manager of General Accounting, Sam Veasey. She also spoke to the president, the vice-president for finance, the vice-president for human resources, the manager of operations accounting, and the director of credit operations. Despite her efforts, she was unable to secure another job within the company.

Henson contends that she deserved an opportunity to compete for the position of Accounting Clerk II in General Accounting.[1] A

thirty-nine year old African–American, Marilyn Oliphant, was initially hired to fill the Accounting Clerk II position as a temporary worker in late 1990 or early 1991. In July of 1992, at Veasey's request, Oliphant's status was changed to that of a regular full-time employee. Veasey completed a personnel requisition form that listed only Oliphant under the heading "candidates." No one other than Oliphant was considered for the Accounting Clerk II position. The position was not posted as a job opening, no applications were accepted for the position, and Henson did not apply for the position. Senior Vice-President Mark Stewart approved the personnel requisition form. Prior to the acceptance of her offer, Oliphant never completed an application form. She did so two days after receiving the job.

Sue Latta, who was in charge of the Job Posting Program and who, according to Henson, had been sensitive to the importance of posting jobs and possible age discrimination claims, stated that the accounting clerk position was not posted because the company was filling a temporary job. Liggett's posting policy allows it to reserve the right not to post a position if there is a reason not to do so. Henson testified she knew that Liggett did not always post jobs.

After Henson discovered on July 22, 1992, that Oliphant had been given the permanent position, Henson spoke with Rolly Allen, Liggett's Vice President for Human Resources. Allen told Henson that though she was considered for the position, "the person doing the hiring felt like [Oliphant] had more skills than you." Upset that she was not given a chance to compete for the position, Henson filed a complaint with the EEOC on August 21, 1992, attaching an eight page letter discussing her termination and her attempts to find another position at Liggett. On her EEOC intake form, she wrote that the particular discriminatory action about which she was complaining was that "a temp was hired in a job I felt I could have done." The EEOC charge, which was filed on November

1. Henson had submitted a formal application for the posted position of Credit Secretary. She was granted an interview, but was not given the job. Additionally, she submitted her resume for the position of Secretary in Manufacturing. Henson admits she was not qualified for either job and does not contest the district court's judgment as to these positions.

16, 1992, stated only that the "company discriminates against persons over 40, as a class, in the areas of discharge and layoff." Dissatisfied with the EEOC's investigation, Henson filed this lawsuit in March 1993 and the EEOC stopped its investigation of the charge at her request.[2] The district court granted Liggett's motion for summary judgment, finding that Henson failed to establish a prima facie case of discrimination based upon her age or her entitlement to early retirement benefits.

## II.

We review grants or denials of motions for summary judgment *de novo* on appeal. *Jackson v. Kimel*, 992 F.2d 1318, 1322 (4th Cir.1993). If there is no genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). An employer is entitled to summary judgment if the plaintiff fails to establish a prima facie case of discrimination or fails to raise a factual dispute regarding the employer's proffered reasons for the alleged discriminatory act. *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993); *E.E.O.C. v. Clay Printing Co.*, 955 F.2d 936, 944 (4th Cir.1992). In *Clay Printing,* we noted that "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 943 (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)). In order to establish a claim under the ADEA, a plaintiff must show that "but for the employer's motive to discriminate against plaintiff on the basis of age," the discriminatory action would not have occurred. *Clay Printing Co.*, 955 F.2d at 940.

Because Henson admits that she has no direct evidence of Liggett's intent to discriminate against her on the basis of her age or her eligibility for retirement benefits, she relies upon the indirect, burden-shifting method of proof developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *see Lovelace v. Sherwin–Williams Co.*, 681 F.2d 230, 239 (4th Cir.1982) (adopting *McDonnell Douglas* presumption scheme in ADEA cases). Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of discrimination by a preponderance of the evidence. *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407, 415 (1993) (citing *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981)).[3] To establish a prima facie case, the plaintiff must prove (1) that she is a member of the protected class, i.e., at least 40 years old; (2) that she was qualified for a job for which the employer was seeking applicants; (3) that she was rejected despite her qualifications; and (4) that the position remained open and the employer continued to seek or accept applications from persons with her qualifications outside the protected class. *Clay Printing Co.*, 955 F.2d at 941; *Ritter v. Mount St. Mary's College*, 814 F.2d 986, 992 (4th Cir.) (citing *McDonnell Douglas*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)), *cert. denied*, 484 U.S. 913, 108 S.Ct. 260, 98 L.Ed.2d 217 (1987).

Establishing a prima facie case raises only an inference of discrimination. The defendant can then offer legitimate nondiscriminatory explanations for the allegedly discriminatory acts. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Tuck v. Henkel Corp.*, 973 F.2d 371, 375 (4th Cir. 1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1276, 122 L.Ed.2d 671 (1993). The employer is not required to prove the absence of a discriminatory motive because the burden is

---

**2.** Liggett argues that Henson cannot pursue her failure to hire claim for the Accounting Clerk II position held by Marilyn Oliphant because the claim was not included in the EEOC charge. Like the district court, we do not address this issue, because we find that the district court properly dismissed Henson's claim on its merits.

**3.** Although the Ninth Circuit in *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994), stated that "the requisite degree of proof necessary to establish a prima facie case for ADEA claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence," we decline to follow this case in light of Supreme Court precedent in *Hicks* and *Burdine*.

one of production, not persuasion. *See Hicks,* —— U.S. ——, ——, ——, 113 S.Ct. 2742, 2747, 2749, 125 L.Ed.2d 407, 416, 418; *EEOC v. Western Electric Co.,* 713 F.2d 1011, 1014 (4th Cir.1983). The plaintiff must then bear the "ultimate burden of persuasion" and show by a preponderance of the evidence that the defendant's explanations are pretextual or otherwise unworthy of credence. *Hicks,* —— U.S. at ——––——, 113 S.Ct. at 2749-50, 125 L.Ed.2d at 418–419; *Mallory v. Booth Refrigeration Supply Co.,* 882 F.2d 908, 910 (4th Cir.1989).

■ Despite the "minutiae of the various proof schemes set forth in *McDonnell Douglas,*" we emphasized in *Birkbeck v. Marvel Lighting Corp.,* 30 F.3d 507, 511 (4th Cir. 1994), that the "straightforward" question to be answered in discrimination cases is whether the plaintiff has successfully demonstrated that she was the victim of age discrimination on the part of the employer. To withstand summary judgment, Henson must produce direct or circumstantial evidence "of a stated purpose to discriminate [on the basis of age] of sufficient probative force to reflect a genuine issue of material fact." *Clay Printing,* 955 F.2d at 941 (quoting *Goldberg v. B. Green & Co., Inc.,* 836 F.2d 845, 848 (4th Cir.1988)).

■ We begin by analyzing plaintiff's prima facie case. It is undisputed that plaintiff is a member of the protected class since she was 50 years old at the time of the alleged discriminatory act. *See* 29 U.S.C. § 631(a) (protecting individuals who are at least 40 years of age). Liggett concedes that plaintiff was qualified for the position. Plaintiff's prima facie case of age discrimination is weaker with respect to whether there was a vacant position and whether the company continued to seek applicants for that position. However, on summary judgment "the non-moving party is entitled to have his evidence as forecast assumed, his version of that in dispute accepted, and the benefit of all favorable inferences." *Conkwright v. Westinghouse Elec. Corp.,* 933 F.2d 231, 233 (4th Cir.1991).

Henson essentially argues that making a temporary employee a permanent employee is an act of seeking an employee for a vacant position. She argues that Liggett discrimi-

nated against her by not hiring or transferring her into an open position. Henson also asserts that Liggett failed to post the job vacancy and to follow the company's Job Posting Program. She relies upon two documents to support her claim that applications were accepted for a competitive job opening: the personnel requisition form on which Oliphant's name was the only name listed under the heading "candidate"; and Oliphant's job application, submitted two days after she was offered the job. Although Henson did not submit a formal application and the job was not posted, in her deposition, she testified that Rolly Allen, Vice President for Human Resources, told her that she was considered for the position, but that "the person doing the hiring felt like [Oliphant] had more skills than you."

In response, Liggett asserts that it did not accept or seek any applications for the position of Accounting Clerk II. According to Liggett, the position into which Oliphant was hired on a full-time basis was not considered an open position since Oliphant had held the position as a temporary worker since late 1990 or early 1991. The application and personnel requisition forms were simply required paperwork for converting a temporary employee to a full-time employee.

Taking all the evidence in the light most favorable to Henson, it is undisputed that the position was not posted as a vacancy, and that before Oliphant was offered the position, no one, including Oliphant, submitted an application for the position. Thus, it is tenuous whether Henson meets the fourth prong of *Clay Printing* and *Ritter,* requiring that plaintiff prove that the position remained opened, or that the company continued to seek applications from others who were equally qualified outside the protected class.

Assuming, without deciding, that Henson has stated a *prima facie* case of age discrimination, the burden shifts to Liggett to produce a legitimate, nondiscriminatory reason for its actions. Liggett states that Oliphant was kept in a position she had held for more than a year as a temporary worker, was more qualified than Henson, and was performing the job to Liggett's satisfaction. Al-

though Henson concedes that these are legitimate nondiscriminatory reasons, she nevertheless, asserts that a genuine factual dispute exists over these reasons. *See Mitchell*, 12 F.3d at 1317.

We, therefore, move to the final stage of our analysis. Considering all of the evidence in the record, we must determine whether Henson has met her ultimate burden of proving that she was intentionally discriminated against because of her age. *See Hicks*, —— U.S. at ——, 113 S.Ct. at 2749, 125 L.Ed.2d at 418; *Mitchell*, 12 F.3d at 1317. The presumption initially granted to the plaintiff after proof of a prima facie case "drops out of the picture," leaving plaintiff to bear the "ultimate burden of persuasion." *Hicks*, —— U.S. at ——–——, 113 S.Ct. at 2749, 125 L.Ed.2d at 418–419. Henson, therefore, must demonstrate by a preponderance of the evidence that Liggett's reasons were a pretext for discrimination. *Burdine*, 450 U.S. at 252–253, 101 S.Ct. at 1093; *see also Hicks*, —— U.S. at ——, 113 S.Ct. at 2754, 125 L.Ed.2d at 424 ("the factfinder must *believe* the plaintiff's explanation of intentional discrimination [and] *dis* believe the employer").

In attempting to meet this burden, Henson relies on the management's discussions about age discrimination and retirement benefits to substantiate her position that a management philosophy existed to terminate older workers, and hire younger workers. Liggett admits that in March 1992, in connection with its concerns about decreasing its workforce, it discussed changing the retirement program and the need to remain cognizant of possible age discrimination claims that might arise. Additionally, in September 1992, according to an affidavit by William Meadors, Director of Logistics, Sue Latta, the human resources manager, and Dian Trosclair, one of Meadors' employees in the Logistics Department, discussed downsizing and restructuring the workforce. Latta and Trosclair allegedly discussed the possible domino effect—placing an older worker into a different position, thereby bumping a young employee from that position.

Although we have recognized that alleged discriminatory statements can be in-dicative of discrimination, *see Wilhelm v. Blue Bell*, 773 F.2d 1429, *cert. denied*, 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986), we have found such statements to be probative evidence only when they directly relate to a particular person, employment decision, or pattern of decisionmaking. *See Clay Printing*, 955 F.2d at 941–42 (finding no nexus between the alleged discriminatory statements and any of the particular employment decisions made by the employer). Henson has failed to show that there was any connection between these discussions in March and September of 1992, which did not include Veasey, and Veasey's decision to keep Oliphant in the Accounting Clerk II job, instead of replacing her with Henson in July 1992. Such isolated, remote statements are not probative of age discrimination or discriminatory purpose. *Birkbeck*, 30 F.3d at 512; *Clay Printing*, 955 F.2d at 943 ("The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.").

Henson also attempts to rely upon statistical evidence to prove that the non-discriminatory reason proffered by Liggett was unworthy of credence. The statistics provided by the employer indicated that between January 1, 1991 and July 26, 1993, 59% of the employees terminated by Liggett were over age forty. Additionally, from May 1992 to July 1993, Liggett hired 35 employees, 25 of whom were under age 40. In response, Liggett argues that because a substantial percentage of its workforce consisted of older employees, it is not surprising that a sizeable number of those laid off would be older workers. Likewise, the hiring of young employees into entry level positions is reasonable since younger people are more apt to apply for such positions. In the absence of demographic information about the pool of employees at Liggett and the pool from which employees were hired or the positions into which they were hired, the figures offered by Henson are not proof of discrimination. *See Mallory*, 882 F.2d at 912 (statistical data is deficient if it does not include the "racial composition of the qualified popula-

tion in the relevant labor pool"). Moreover, Henson fails to acknowledge that 41% of the terminated employees were outside the protected class and that ten of the new hires were within the protected class. In *Birkbeck*, we suggested that "employers who knowingly hire workers within a protected group seldom will be credible targets for charges of pretextual firing." 30 F.3d at 513.

■■ Henson, therefore, has failed to prove that but for Liggett's intent to discriminate against her because of her age, Liggett would have terminated Oliphant and placed Henson in her position. *Clay Printing*, 955 F.2d at 940. As the district court recognized, a company is not required to terminate younger employees to retain older employees. *Birkbeck*, 30 F.3d at 512 ("replacement by a younger employee is not dispositive of age discrimination" noting that such a rule "would transform the ADEA into something akin to a strict seniority protection system."). We have recognized the importance of giving an employer the latitude and autonomy to make business decisions, including workplace reorganization, as long as the employer does not violate the ADEA. *Clay Printing*, 955 F.2d at 946 ("It is not ... the function of this court to second guess the wisdom of business decisions."); *see also Birkbeck*, 30 F.3d at 513 (finding that the employer's layoff decisions reflected "business realities, not age discrimination," and emphasizing that "[t]he ADEA was not intended to obstruct the ability of a commercial enterprise to make necessary adjustments in the face of economic challenges."). Despite plaintiff's contentions, the undisputed evidence indicates that Liggett chose to convert a temporary position into a permanent position and retain the temporary worker, who had at least a year of on-the-job experience and was performing the job satisfactorily.

Under these circumstances, the plaintiff has failed to create a genuine issue of material fact as to the ultimate question of whether Liggett intentionally discriminated against her on the basis of her age. Assuming she met the prima facie case, we find that she has failed to carry her burden of persuasion in light of Liggett's legitimate nondiscriminatory reasons for its hiring decision. Accord-

ingly, we affirm the district court's grant of summary judgment in favor of Liggett as to plaintiff's ADEA claim.

### III.

Plaintiff also alleges a cause of action for failure to hire in violation of the public policy articulated in North Carolina's Equal Employment Practices Act ("EEPA"), N.C.G.S. § 143–422.1. *Bass v. City of Wilson*, 835 F.Supp. 255, 258 (E.D.N.C.1993) (finding a cause of action for age discrimination for failure to hire under the EEPA based on the principles under the ADEA); *see Phillips v. J.P. Stevens & Co., Inc.*, 827 F.Supp. 349, 353 (M.D.N.C.1993) ("The public policy of North Carolina expressed in N.C.G.S. § 143–422.1 *et seq.* is essentially identical to the public policy articulated in Title VII"); *see also, North Carolina Dep't of Correction v. Gibson*, 308 N.C. 131, 301 S.E.2d 78 (1983) (adopting the evidentiary standards and principles of Title VII cases to the EEPA). Because plaintiff relies upon the same evidence to support her state law claim for age discrimination under the EEPA, as she did in the ADEA context, the district court correctly granted summary judgment to Liggett on Henson's state law claim.

### IV.

■■ Henson also claims that Liggett violated section 510 of ERISA, 29 U.S.C. § 1140. Section 510 makes it unlawful "to discharge ... or discriminate against a participant ... for the purpose of interfering with the attainment of any right to which such participant may become entitled." To establish a prima facie case under ERISA, Henson must show that she is in the protected class, that she was qualified for the position she sought, and that she was not offered the position "under circumstances that give rise to an inference of discrimination." *Dister v. Continental Group Inc.*, 859 F.2d 1108 (2d Cir.1988); *Clark v. Coats & Clark, Inc.*, 990 F.2d 1217, 1223 (11th Cir.1993).

Henson clearly is within the protected class and qualified for the position. However, she has failed to prove that Liggett had a specific intent to interfere with her pension

rights under § 510 of ERISA. *Conkwright v. Westinghouse Electric Corp.*, 933 F.2d 231, 238 (4th Cir.1991). She has not demonstrated that Liggett's decision to change Oliphant from a temporary to a regular employee was based on the company's specific intent to deny Henson her early retirement benefit. Thus, Henson has failed to establish a prima facie case under section 510 of ERISA.

## V.

We, therefore, find that the district court correctly granted summary judgment to the defendant on plaintiff's employment discrimination claims under the ADEA, the EEPA, and ERISA. Accordingly, we affirm the judgment of the district court.

*AFFIRMED.*