**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JAMES LARRY RHYMER,
Plaintiff-Appellant,

v.

No. 96-1191

YOKOHAMA TIRE CORPORATION,
formerly known as Mohawk Rubber
Company,
Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Virginia, at Roanoke.
James C. Turk, District Judge.
(CA-93-198-R)

Argued: December 4, 1996

Decided: January 16, 1997

Before RUSSELL and MICHAEL, Circuit Judges, and DAVIS,
United States District Judge for the District of Maryland, sitting by
designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Melissa Windham Friedman, Roanoke, Virginia, for
Appellant. Thomas R. Crookes, BROUSE & MCDOWELL, Akron,
Ohio, for Appellee. **ON BRIEF:** Anthony F. Anderson, Roanoke,
Virginia, for Appellant. R. Scot Harvey, BROUSE & MCDOWELL,

Akron, Ohio; Bayard E. Harris, Agnis C. Chakravorty, THE CEN-
TER FOR EMPLOYMENT LAW, Roanoke, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

James Rhymer appeals the award of summary judgment to his for-
mer employer, Yokohama Tire Corporation (Yokohama), on his
claims for discrimination under the Age Discrimination in Employ-
ment Act (ADEA), 29 U.S.C. § 621 et seq. , and for breach of an
implied contract of employment. Finding no error, we affirm the dis-
trict court.

I.

In 1964 Rhymer was hired by Mohawk Rubber Company
(Mohawk), the predecessor to Yokohama. After working for Mohawk
in Akron, Ohio, and Helena, Arkansas, Rhymer was transferred to the
Salem, Virginia, plant in 1976. At Salem Rhymer initially served as
plant controller. Later, he was plant manager for several years, but he
eventually returned to his old position as plant controller, the job he
held until he was terminated on January 28, 1992.

Upon his arrival at the Salem facility, Rhymer received an
employee handbook and was told that the book contained the general
rules for plant employees. Rhymer testified in his deposition that the
person who gave him the handbook said that it guaranteed his
employment if he did an acceptable job. Rhymer admitted, however,
that he reviewed the handbook and found no mention of a guarantee
of employment.

Yokohama purchased Mohawk in 1989. Yokohama's corporate
offices were in Akron, Ohio. After the acquisition, Rhymer primarily

2

reported to Richard Switzer, the plant manager at Salem, and Matthew Anderson, the acting corporate controller in Akron.

Rhymer's duties as plant controller were varied and extensive. He was responsible for all of the plant's finances, including budget preparation and the preparation of reports and analyses relating to usage and spending variances. During most of his employment with Yokohama, Rhymer was regarded as a good employee. He received yearly raises and bonuses, including a bonus the month before his termination. However, in the months preceding his termination, Rhymer came under increasing pressure to address the problem of usage and spending variances at the Salem plant. A usage variance problem meant that too few tires were being produced for the amount of raw materials purchased. A spending variance problem meant that material and service costs were exceeding company standards or were too high.

Both Switzer, the plant manager, and Anderson, the acting corporate controller, told Rhymer that they were concerned about his inability to analyze the variance problem and to suggest countermeasures. On December 13, 1991, Switzer sent Rhymer a letter warning him that his treatment of the problem of "inventory shortages" (that is, usage variance) at the Salem plant "had not been satisfactory." On December 20, 1991, Anderson sent Rhymer a letter telling him that he "must be pro-active instead of reactive" in analyzing and recommending potential solutions to the usage variance problem. On January 22, 1992, Rhymer attended an executive committee meeting in Akron. The minutes of the meeting reflect the following: Switzer announced that Rhymer would speak on the variance issue. After Rhymer made his presentation, Y. Hanabusa (the company president) asked why the usage variance problem was worse in 1991 than in 1990 and 1989. Rhymer could not explain, asserting that he lacked the right tools. For example, Rhymer said that he received information too late to control the problems. Hanabusa indicated his displeasure with Rhymer and told him that he was the person responsible for controlling variances and costs.

On January 28, 1992, Rhymer was terminated. He was 54 at the time. Hanabusa, not Switzer or Anderson, made the decision to terminate Rhymer. Yokohama cited Rhymer's inability to perform the ana-

3

lytical and financial roles of a plant controller, including his inability to deal with the variance problem, as the reason for his termination. The parties dispute which person or persons assumed Rhymer's duties after his termination. Rhymer claims that Gary Purdy, age 41, took over most of his work.

Rhymer sued Yokohama in district court, claiming that Yokohama discharged him because of his age in violation of the ADEA and that Yokohama breached his employment contract that was created, Rhymer asserts, by an employee handbook. The district court granted Yokohama's motion for summary judgment, concluding that Rhymer failed to establish a prima facie case of age discrimination and failed to establish the existence of a valid employment contract under Virginia law. Rhymer appeals.

## II.

We review grants or denials of motions for summary judgment de novo. Jackson v. Kimel, 992 F.2d 1318, 1322 (4th Cir. 1993). If there is no genuine dispute as to a material fact, the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In a discrimination case "[a]n employer is entitled to summary judgment if the plaintiff fails to establish a prima facie case of discrimination or fails to raise a factual dispute regarding the employer's proffered reasons for the alleged discriminatory act." Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995). We noted in EEOC v. Clay Printing Co., 955 F.2d 936, 943 (4th Cir. 1993), that "`the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). To establish a claim under the ADEA, "a plaintiff must show that but for the employer's motive to discriminate against plaintiff on the basis of age, the discriminatory action would not have occurred." Henson, 61 F.3d at 274 (citations omitted).

## A.

On his ADEA claim Rhymer relies upon the indirect, burden-shifting method of proof developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973); see Lovelace v. Sherwin-Williams Co.,

4

681 F.2d 230, 239 (4th Cir. 1982) (adopting McDonnell Douglas presumption framework in ADEA cases). If a plaintiff proceeds under the McDonnell Douglas framework, the case essentially breaks into three steps. First, the plaintiff must establish a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. Second, the defendant must respond with a nondiscriminatory reason for the termination. McDonnell Douglas, 411 U.S. at 802. Third, if the defendant responds with a legitimate nondiscriminatory reason, the "plaintiff must then bear the ultimate burden of persuasion and show by a preponderance of the evidence that the defendant's explanations are pretextual or otherwise unworthy of credence." Henson, 61 F.3d at 275 (citations omitted).

When the district court granted summary judgment to Yokohama, there were four factors that a plaintiff had to demonstrate to make out a prima facie case for age discrimination in this circuit. O'Connor v. Consolidated Coin Caterers Corp., 56 F.3d 542, 546 (4th Cir. 1995), rev'd, 116 S. Ct. 1307 (1996). The plaintiff had to show (1) that he was a member of the protected class (ages 40-70), (2) that he had been discharged, (3) that he was performing his job at a level that met his employer's legitimate expectations, and (4) that he was replaced by someone of comparable qualifications outside the protected class. Id. at 546. The district court concluded that Rhymer had failed to meet the fourth factor because he was replaced by someone within the protected class.

After the district court's decision the Supreme Court rejected our fourth factor for a prima facie case in age discrimination cases. See O'Connor v. Consolidated Coin Caterers Corp., 116 S. Ct. 1307 (1996). In Consolidated Coin Caterers the Supreme Court said that "the fact that a replacement is substantially younger than the plaintiff is a far more reliable indicator of age discrimination than is the fact that the plaintiff was replaced by someone outside the protected class." Id. at 1310 (emphasis added). The Supreme Court left our first three factors intact.

Here, we agree with the district court that Rhymer made out the first three factors of a prima facie case. However, in light of the Supreme Court's decision in Consolidated Coin Caterers, we must re-

5

assess whether Rhymer has met the fourth factor, that is, whether he has shown that he was replaced by someone substantially younger.

Rhymer was 54 years old when Yokohama terminated him, and there is a dispute as to which person or persons replaced Rhymer. Rhymer contends that he was replaced primarily by a new hire, Gary Purdy, who was 41. Yokohama contends that Rhymer's duties were given to several persons of various ages: Purdy, Robert Craig (age 58), Yohio Amano (age 46), and Robert Keen (age 45).

Because we must view all factual inferences in a light that favors the non-moving party, see Matsushita Electric Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986), we will accept Rhymer's contention that he was primarily replaced by Purdy. Purdy, age 41, was substantially younger than Rhymer, who was 54. Because Rhymer met the (modified) fourth factor, he did establish a prima facie case.

The burden then shifts to Yokohama to respond with a legitimate nondiscriminatory reason for the termination. McDonnell Douglas, 411 U.S. at 802. Yokohama cites Rhymer's poor job performance, specifically his inability to analyze and to recommend solutions for the usage variance problem. This explanation is sufficient to discharge Yokohama's burden of production at the second step.

We continue to the third step of the McDonnell Douglas scheme and address the "straightforward" question of whether "the plaintiff has successfully demonstrated that [he] was the victim of age discrimination on the part of the employer." Burns v. AAF-McQuay, Inc., 96 F.3d 728, 732 (4th Cir. 1996) (quoting Henson v. Liggett Group, Inc., 61 F.3d 270, 275 (4th Cir. 1995) (citations omitted)). "[I]f the plaintiff offers nothing to disprove the defendant's nondiscriminatory explanation[ ], the explanation['s] weakness alone is insufficient to create an issue of pretext." Id. The plaintiff bears the ultimate burden of presenting "affirmative evidence of age-based animus." Id.

Rhymer argues that his immediate supervisors, Switzer and Anderson, did not agree with Hanabusa's decision to fire him. He reasons, therefore, that his job performance must have been satisfactory and the real reason for his termination must have been his age. Rhymer

6

did not take the deposition of Hanabusa, the person responsible for the decision to fire Rhymer. But there is evidence in the record (including the minutes of the January 22, 1992, executive committee meeting) suggesting that Hanabusa was dissatisfied with Rhymer's job performance. Although Switzer and Anderson, who were themselves critical of Rhymer's performance, did not think that Rhymer's inadequacies rose to a level warranting termination, that does not support an inference that Hanabusa (the company president) fired Rhymer because of age discrimination.

Rhymer also relies on the fact that since February 1992 Yokohama has hired ten management persons, and only one of those hired was within the protected class (age 40-70). Rhymer, however, produced no demographic information about the pool of employees at Yokohama nor about the pool from which employees were hired. Without data about the relevant labor pool, the figures offered by Rhymer are not proof of discrimination. See Henson, 61 F.3d at 276-77.

Finally, in an affidavit Rhymer said, "Yokohama employees have commented to me that they have heard Mr. Akashi state that perhaps older workers should be replaced because they would not change their ways." "[A]lleged discriminatory statements can be indicative of discrimination." Henson, 61 F.3d at 276. However, to constitute probative evidence any statement must relate to a "particular person, employment decision, or pattern of decisionmaking." Id.; see also Clay Printing, 955 F.2d at 941-42 (noting there was no nexus between the alleged discriminatory statements and any employment decisions made by the employer). Assuming Rhymer could overcome the hearsay problems with the statement attributed to Akashi, Rhymer has still not shown that there was any connection between the Akashi statement and Hanabusa's decision to terminate him.

We must conclude that the evidence Rhymer relies on to show age-based animus is not sufficient to create a genuine issue of material fact on the ultimate question of whether Yokohama intentionally discriminated against him because of his age. We therefore affirm the district court's grant of summary judgment to Yokohama on Rhymer's ADEA claim.

7

B.

Rhymer also contends that the district court erred when it granted Yokohama summary judgment on his breach of contract claim. Rhymer argues that the employee handbook constituted an implied promise that he would be fired only "for cause" and thus rebutted any presumption of at-will employment.

The district court determined correctly that Virginia law governs the contract issue because the parties entered into the employment relationship in Virginia. See Nguyen v. CNA Corp., 44 F.3d 234, 237 (4th Cir. 1995). Virginia adheres to the common law rule that absent a provision to the contrary, contracts for the rendition of services are at-will. Miller v. SEVAMP, Inc., 362 S.E.2d 915, 916-17 (Va. 1987). In a case interpreting Virginia law, we said that we will not "imply a just cause provision where one is not explicitly provided." Nguyen, 44 F.3d at 238 (quoting Sullivan v. Snap-On Tools Corp., 708 F. Supp. 750, 752 (E.D. Va. 1989)).

Rhymer contends that the following section in the employee hand-book creates a right not to be fired without cause:

> LOSS OF SERVICE: There are several ways an employee can lose his service. The following things will result in loss of service:
>
> (1) Voluntary termination of employment.
>
> (2) An employee absent for three consecutive days with-out permission will be regarded as a voluntary resignation.
>
> (3) Discharge for just cause: This could include violation of rules, unsatisfactory work performance, or improper con-duct.
>
> . . . .

(Emphasis added). A common sense reading of the employee hand-book defeats Rhymer's contention. The phrase mentioning "just

8

cause" was placed in the employee handbook under the "LOSS OF SERVICE" heading. The handbook defines "service" as "the time that the employee has worked for the Company. It gives the employee certain preferences or ranking when decisions must be made in regard to promotions, reduction in forces and determination of eligibility for the various benefits." (Emphasis added). "Discharge for just cause" is simply one of the ways in which "service" time can be lost. Thus, the phrase is not used as an explicit "just cause" provision which would limit the company's ability to terminate employees. Indeed, nowhere in the handbook does it say that an employee can be discharged only for just cause.

In addition, Virginia recognizes the concept of mutuality of engagement. See Town of Vinton v. City of Roanoke, 80 S.E.2d 608, 617 (Va. 1954) (noting that "there must be absolute mutuality of engagement, so that each party has the right to hold the other to a positive agreement.") (citations omitted). "Notions of fundamental fairness underlie the concept of mutuality which extends a corresponding freedom to the employer." Miller, 362 S.E.2d at 917. "It is hornbook law that a contract terminable at the will of one party is terminable at the will of the other. . . ." Hicks v. Freeman, 397 F.2d 193, 194-95 (4th Cir. 1968). Rhymer testified in his deposition that he would have been free to quit his job with Yokohama anytime he wished. He also admitted that he had looked at the employee handbook and found no guarantee of employment. In light of the language in the employee handbook and Rhymer's admissions during his deposition, we agree with the district court's determination that Rhymer has not offered sufficient evidence to rebut the presumption that he was an at-will employee.

III.

The district court's award of summary judgment to Yokohama Tire Corporation is affirmed.

AFFIRMED

9