Filed:  April 2, 1997

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 96-1408
(CA-94-967-2)

Eric C. Walton, et al,

Plaintiffs - Appellants,

versus

John D. Dalton, etc.,

Defendant - Appellee.

O R D E R

The Court amends its opinion filed March 19, 1997, as follows:

On page 2, section 2, line 5 -- the following information is added to the "On Brief" section: "John A. Dietrich, Daniel E. O'Connell, Jr., Navy Litigation Office, UNITED STATES DEPARTMENT OF THE NAVY, Arlington, Virginia, for Appellee."

On page 4, first full paragraph, line 2 -- the wording is corrected to read "dismissing seven of their ten claims, . . . ."

For the Court - By Direction

/s/ Patricia S. Connor

Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ERIC C. WALTON, Agent; CARL L.
PHILLIPS, Agent,
<u>Plaintiffs-Appellants,</u>

and

CHARLES A. BROWN, Agent,
<u>Plaintiff,</u>

v.

No. 96-1408

JOHN D. DALTON, Secretary of the
Navy,
<u>Defendant-Appellee,</u>

and

TIDEWATER VIRGINIA FEDERAL
EMPLOYEES METAL TRADES COUNSEL,
AFL-CIO,
<u>Defendant.</u>

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Henry C. Morgan, Jr., District Judge; Robert G. Doumar,
Senior District Judge.
(CA-94-967-2)

Argued: January 29, 1997

Decided: March 19, 1997

Before HALL and LUTTIG, Circuit Judges, and BUTZNER,
Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** SuAnne Leigh Hardee, HARDEE & HENNESSY, P.C., Chesapeake, Virginia, for Appellants. Lawrence Richard Leonard, Assistant United States Attorney, Norfolk, Virginia, for Appellee. **ON BRIEF:** Thomas F. Hennessy, III, HARDEE & HENNESSY, P.C., Chesapeake, Virginia, for Appellants. John A. Dietrich, Daniel E. O'Connell, Jr., Navy Litigation Office, UNITED STATES DEPARTMENT OF THE NAVY, Arlington, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Plaintiffs-appellants, employees of the United States Navy, appeal from the pre-trial dismissal of seven of their ten claims of employment discrimination against defendant-appellee, Secretary of the Navy. We affirm.

I.

Plaintiffs-appellants Eric C. Walton, Carl L. Phillips, and Charles A. Brown, all racial minorities, were employees in "Shop 71" at the Norfolk Naval Shipyard. On January 25, 1994, Walton initiated contact with an Equal Employment Opportunity ("EEO") Counselor at the shipyard in order to complain of race discrimination in employment, see 42 U.S.C. § 2000e et seq., and subsequently filed an informal complaint against the Navy. J.A. at 5. This initial contact commenced the administrative pre-complaint process set forth in Equal Employment Opportunity Commission Regulations. See 29 C.F.R. § 1614.105.

In response to Walton's informal complaint, the Navy, in a letter dated February 25, 1994, requested to Walton that he provide "specific information . . . regarding alleged discrimination," including

2

"[n]ames, dates and circumstances of instances of adverse treatment." J.A. at 14. About three weeks later, in a letter dated March 15, 1994, Walton responded by setting forth several general allegations of alleged discrimination against unspecified persons on unspecified dates, as well as some specific instances of alleged discrimination. J.A. at 16-19.

Walton had no further contact with the EEO counselor until March 23, 1994. On that date, the EEO counselor conducted a "final interview" with Walton, 29 C.F.R. § 1614.105(d), thereby culminating the administrative pre-complaint procedure. Supp. J.A. at 22; Appellant's Br. at 17.

Subsequently, on April 6, 1994, Walton filed a formal administrative complaint on behalf of himself, Phillips, and Brown,[1] and, on October 6, 1994, filed this action in the district court setting forth ten separate claims of alleged discrimination. These claims included: (1) discriminatory denial of training opportunities; (2) discriminatory denial of nuclear designations; (3) discriminatory allocation of overtime work; (4) discriminatory denial of promotions; (5) discriminatory scheme to replace black workers; (6) discriminatory hiring practices; (7) discriminatory salary differential; (8) discriminatory assignment to the Excess Labor Shop; (9) discriminatory allocation of undesirable work assignments; and (10) retaliatory conduct by the employer. J.A. at 29-31, 146.

The district court, adopting the recommendation of the magistrate judge, dismissed the first seven claims for failure to exhaust administrative remedies. J.A. at 108-09, 146. In addition, the district court dismissed claims (1), (3), (4), (6), and (7), for lack of standing. J.A. at 109, 146.

The remaining three claims proceeded to trial. At the close of plaintiffs' evidence, the district court dismissed the claims of Brown and Walton as a matter of law. J.A. at 999. At the close of defendants' evidence, Phillips moved for a directed verdict on his remaining

_____

[1] Brown and Phillips are relying on Walton's administrative complaint during the pre-complaint process, as well as his formal complaint. This is the only complaint before the court.

claims, which the district court denied. J.A. at 963-64. The jury returned a verdict in favor of the Navy on Phillips' claims. J.A. at 1000. Plaintiffs appealed.

On appeal, plaintiffs claim that the district court erred first, in initially dismissing seven of their ten claims, second, in denying Phillips' motion for a directed verdict, and third, in excluding certain evidence.

II.

Plaintiffs argue that the district court erred in dismissing seven of their ten claims for failure to exhaust administrative remedies. We disagree.

Before an aggrieved individual may file suit in court against his employer, that individual must first comply with the administrative pre-complaint procedures set forth in EEOC regulations. See 29 C.F.R. § 1614.105. Specifically, "in order to try to informally resolve" a claim of discrimination prior to the filing of a formal complaint in court,

> [a]n aggrieved person must initiate contact with a[n] [EEO] Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action.

29 C.F.R. § 1614.105(a)(1). During this pre-complaint procedure, an aggrieved individual must provide the EEO Counselor with "specific information or details of discriminatory action suffered by [him]" within 45 days of his initial contact with the counselor, Woodward, 717 F.2d at 914, since the failure to provide "such details and dates . . . prevent[s] the defendant from investigating the charges," id. If an aggrieved individual fails to provide such specified information, then his complaint must be dismissed for failure to exhaust administrative remedies. Id.

Here, prior to the termination of the pre-complaint procedure, the plaintiffs utterly failed to provide the EEO Counselor with any details

4

of specific instances of discrimination against them as to the seven dismissed claims. Indeed, at oral argument, counsel for the plaintiffs candidly conceded that the plaintiffs' March 15 letter contained no specific instances of discrimination and that, in fact, there was no record evidence of specific instances of discrimination at all with respect to the seven dismissed claims.

For example, in his initial informal complaint (on which all three plaintiffs rely), Walton merely alleged that his "requested relief [was] to be given [the] opportunity to be treated fairly, training, management experience, cross-training, decision-making process. Opportunity to apply for higher [illegible word] position." J.A. at 7. Walton declined to elaborate on these charges in his March 15 letter (which apparently was the only other contact between Walton and the EEO Counselor prior to his final interview). The most specific discriminatory act identified by Walton in this letter alleged only that he and Phillips had been denied overtime work because of their race, J.A. at 17-18, but the letter failed to set forth any details on this alleged denial, such as when it had taken place or who was responsible for it. More typical of Walton's allegations in this letter was his claim that blacks had been denied training opportunities because of their race, wherein he alleged merely that "trades that are overwhelmingly black [ ] have been denied cross-training offered to other trades . . . all of which are overwhelmingly white," J.A. at 16. Like the other allegations in the letter, Walton merely alleged general acts of discrimination against minorities, without naming the specific individual(s) subject to discrimination, the specific date on which the discrimination took place, or any other details regarding the discrimination.

Accordingly, we affirm the district court's dismissal of the seven of plaintiffs' ten claims of race discrimination in employment. Prior to the termination of the pre-complaint procedure, plaintiffs simply failed to provide the EEO Counselor with any specific information regarding alleged discriminatory actions taken by the Navy within 45 days of the plaintiffs' initial contact with the counselor.**2**

---

**2** For the same reasons, the district court also did not err in dismissing five of those seven claims for lack of standing. Because they failed to

5

III.

Phillips argues that the district court erred in refusing to grant him a directed verdict as to his claim that he was discriminatorily reassigned from more to less desirable work. We disagree.

The Navy offered several non-discriminatory reasons which, if accepted, would indisputably exonerate the Navy. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 510-11 (1993). The Navy presented evidence that such re-assignment was necessitated by a decline of work at the shipyard, that individuals who remained in the position from which Phillips was transferred were more qualified, and that the decision to transfer Phillips was made by minority supervisors of the same race as Phillips. The jury apparently accepted these non-discriminatory explanations over Phillips' evidence to the contrary as was its prerogative to do. Thus, the district court did not err in denying the motion for directed verdict.

IV.

Finally, plaintiffs argue that the district court abused its discretion in making two evidentiary rulings. Again, we disagree.

First, the district court did not err when it refused to admit documents demonstrating that, subsequent to the plaintiffs' complaint of discriminatory job-assignments, a shipyard supervisor named Harold Jones assigned certain jobs on the basis of race. Jones was not the supervisor charged with decision-making authority over the plaintiffs and, as we recently observed in Henson v. Liggett Group, statements made by non-decision-makers are of low probative value, 61 F.3d 270, 276 (4th Cir. 1995). Moreover, these documents apparently evidenced a short-lived remedial program designed to address the alleged racial imbalance complained of by the plaintiffs, J.A. at 459,

_____

provide sufficient detail of the alleged discrimination, the plaintiffs did not "allege specific, concrete facts demonstrating that the challenged practices harmed [them], and that [they] personally would benefit in a tangible way from the court's intervention." Warth v. Seldin, 422 U.S. 490, 508 (1974).

6

462, and so, in addition to being of little relevance to claims of discrimination <u>against</u> the plaintiffs, also presented the potential danger of leading the jury to infer an admission of past discriminatory practices on the part of the Navy, <u>cf</u>. Fed. R. Evid. 407.

Second, the district court did not err when it refused to admit testimony from Walton describing job assignments in Shop 71 over a brief one to two week period in order to establish a pattern of discriminatory job assignments. J.A. at 635. The plaintiffs already had available to them virtually identical information in the form of "job order data" generated from a computerized labor accounting system which, as the parties agreed, "reliably establishe[d] what workers performed what jobs or tasks at what particular times." J.A. at 266. Indeed, at trial, plaintiffs' counsel conceded that Walton's testimony almost completely overlapped with the "job order data" for the relevant time period, the only real difference being that the "job order data" was more accurate than Walton's testimony. <u>See</u> J.A. at 635. Moreover, unlike the "job order data," which covered an extended period of time, Walton's testimony only would have covered a one to two week period and so was less probative of an overall pattern of discrimination on the part of the Navy. <u>Cf</u>. <u>Ottaviani</u> v. <u>S.U.N.Y.</u>, 875 F.2d 365, 376 (2nd Cir. 1989), <u>cert</u>. <u>denied</u>, 493 U.S. 1021 (1990).

<u>CONCLUSION</u>

For the foregoing reasons, the judgment of the district court is affirmed.

<u>AFFIRMED</u>

7