**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

DAVID RAMSEY,
<u>Plaintiff-Appellant,</u>

v.

WHITE CONSOLIDATED INDUSTRIES,
INC., d/b/a Frigidaire Company;

No. 97-1383

LINDA BROCK,
<u>Defendants-Appellees,</u>

and

TONY ADAMS,
<u>Defendant.</u>

Appeal from the United States District Court
for the District of South Carolina, at Anderson.
William M. Catoe, Jr., Magistrate Judge.
(CA-95-3776-8-3AK)

Argued: March 2, 1998

Decided: July 17, 1998

Before ERVIN and NIEMEYER, Circuit Judges, and
BROADWATER, United States District Judge for the
Northern District of West Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Julius C. Nicholson, Jr., EPPS, NICHOLSON &
STATHAKIS, Anderson, South Carolina, for Appellant. Ingrid

Blackwelder Erwin, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Greenville, South Carolina, for Appellees. **ON BRIEF:** Benjamin P. Glass, OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C., Greenville, South Carolina, for Appellees.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

## OPINION

PER CURIAM:

David Ramsey appeals from the district court's grant of summary judgment against him on his claim that his employer, Frigidaire Company, violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq. (1994), when it discharged him due to his excessive absenteeism. We find that Ramsey failed to establish a prima facie case of discrimination under the ADA and affirm.

I.

Plaintiff-appellant David Ramsey has been confined to a wheelchair since being shot in the back in 1986. In September 1986, Ramsey applied for and began receiving Social Security Disability benefits based on a determination by the Social Security Administration ("SSA") that he was "totally disabled."

Frigidaire hired Ramsey for a full-time, regular position on the assembly line in its Anderson, South Carolina plant in September 1993, after Ramsey had been working at the same plant as a temporary employee for approximately one year. Approximately 15 people worked on the "divider line" with Ramsey, and he testified that the workers would often rotate to different jobs on the line. He was unable to do so, however, because pipes and electrical wires blocked wheelchair access to part of the line. Ramsey claims he asked Frigi-

2

daire for accommodations that would allow him to be able to work different parts of the line, stand occasionally while working, and otherwise make it easier to navigate a wheelchair on the premises.

Ramsey was aware of Frigidaire's attendance policy, which was based on a ten-point system. Each employee would start with ten points, and then have points subtracted if he or she were absent or tardy. No points were deducted for approved medical leave, and employees could have a half-point added for every thirty-day period with perfect attendance. Employees reaching zero points were terminated. For employees with chronic medical conditions, Frigidaire had an "occurrence program" -- a modified, less-stringent version of its attendance policy, in which five absences were allowed before a point would be deducted. Ramsey, who had been working under the traditional attendance program, was approved for the occurrence program after bringing in a note from his doctor. All the points Ramsey had previously incurred were then recalculated according to the occurrence program.

Frigidaire kept a log of Ramsey's attendance throughout his employment, and Ramsey testified that, as far as he knew, all the entries in the log were correct. Ramsey was counseled about his attendance on December 8, 1993, when he had 4.5 points remaining, and May 3, 1994, when he had only 1.0 point left. On August 16, 1994, Ramsey reached zero attendance points when he missed work to take his wife to the doctor. A review of the attendance log shows that in the eleven months he worked for Frigidaire, Ramsey was absent, on leave, arrived late, or left early on a total of 92 days.

Ramsey returned to work on August 22, 1994. On that day he met with Tony Adams, Frigidaire's employee relations manager, and Linda Brock, the employee relations/benefits manager. Adams reviewed Ramsey's attendance record with him and explained that he was being terminated because he had reached zero points. After being terminated by Frigidaire, Ramsey worked as a salesperson in an electronics store for a short time, but left that job in December 1994.

In early 1995, the SSA wrote Ramsey, inquiring about his disability and noting that earnings had been reported to his Social Security record. In response, Ramsey submitted a sworn report and letter in

3

which he stated that he had "not worked since December of 1994, because of illness related to my disability" and that he felt he was "still eligible and entitled to disability benefits." Joint Appendix at 160.

In November 1995, after receiving a right-to-sue letter from the EEOC, Ramsey filed suit against Frigidaire and Frigidaire's employees Adams and Brock alleging, inter alia, that his termination violated the ADA. Frigidaire responded by filing a motion for summary judgment, which the magistrate judge* granted on the ground that judicial estoppel barred Ramsey from asserting an ADA claim when he had represented to the SSA that he was totally disabled and, alternatively, on the ground that Ramsey had failed to make a prima facie case under the ADA because his poor attendance record showed that he was not "otherwise qualified" for the job in question. After Ramsey's subsequent motion to amend the judgment was denied by the district court, he appealed.

II.

We review the district court's grant of summary judgment de novo; if there is no genuine issue as to any material fact, the moving party is entitled to summary judgment as a matter of law. See Fed. R. Civ. P. 56(c); Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995). "An employer is entitled to summary judgment if the plaintiff fails to establish a prima facie case of discrimination or fails to raise a factual dispute regarding the employer's proffered reasons for the alleged discriminatory act." Id. "[T]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Anderson v. Liberty Lobby, Inc., 447 U.S. 242, 252 (1986).

_____

*The parties consented to the jurisdiction of a magistrate judge to enter a final order pursuant to 28 U.S.C. § 636(c)(1) (1994). For convenience, we refer to the magistrate judge as "the district court" throughout the opinion.

4

III.

We affirm the district court's grant of summary judgment for Frigidaire on the ground that Ramsey failed to raise a genuine issue of material fact over whether he was "otherwise qualified" for his position at Frigidaire. In order to establish a prima facie case of employment discrimination, a plaintiff must prove that (1) he has a disability; (2) he is otherwise qualified for the job in question; and (3) he was discharged solely because of his disability. See Doe v. University of Md. Med. Sys. Corp., 50 F.3d 1261, 1265 (4th Cir. 1995). Because of his poor attendance record, Ramsey was not qualified for the position from which he was terminated. "[A] regular and reliable level of attendance is a necessary element of most jobs. . . . An employee who cannot meet the attendance requirements of the job at issue cannot be considered a `qualified' individual protected by the ADA." Tyndall v. National Educ. Centers, Inc., 31 F.3d 209, 213 (4th Cir. 1994). The record clearly shows that Ramsey had an attendance problem: he was absent, on leave, late, or left early on 92 days out of 11 months, and reached zero points even under Frigidaire's modified"occurrence program" attendance policy.

Ramsey contends that Frigidaire's failure to accommodate him contributed to his high number of absences. He maintains that on some occasions he was tardy because an insufficient number of handicapped parking spaces available at the job site made parking difficult for him. He also suggests that many of his absences were due to illnesses which resulted from his inability to perform pressure releases while working on the assembly line, and that Frigidaire failed to reasonably accommodate him when it refused to build him a stand or redesign the assembly line by moving pipes and wires.

Absent any further evidence to support them, however, these arguments fail to meet the evidentiary standard necessary to create a genuine issue of material fact. As this court has frequently stated, mere assertions by the plaintiff are not enough to survive summary judgment. See, e.g., Abcor Corp. v. AM Int'l, Inc., 916 F.2d 924, 929 (4th Cir. 1990). Yet aside from the conclusory assertion that he would have been absent or tardy less frequently if Frigidaire had made the accommodations that he allegedly requested, Ramsey has presented no evidence that his poor attendance record was the result of Frigi-

5

daire's failure to reasonably accommodate his disability. On the contrary, the record shows that Ramsey's last absence, which brought him down to zero points and led directly to his termination, occurred because he took his wife to the doctor and was totally unrelated to his disabilities.

We find that Frigidaire reasonably accommodated Ramsey's needs by placing him on the occurrence program. Even with this accommodation, however, he was unable to show up for work in a reasonably reliable fashion, and this inability shows that he was not therefore "otherwise qualified" for the position.

IV.

Because we affirm the district court's grant of summary judgment on the ground that Ramsey failed to establish a prima facie case of discrimination under the ADA, we find it unnecessary to rely on the doctrine of judicial estoppel.

AFFIRMED