**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

JOHN J. DEVAN,
<u>Plaintiff-Appellant,</u>

v.                                                              No. 97-1023

BARTON-COTTON, INCORPORATED,
<u>Defendant-Appellee.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Walter E. Black, Jr., Senior District Judge.
(CA-95-3132-B)

Submitted: October 31, 1997

Decided: April 20, 1998

Before WILKINS and MICHAEL, Circuit Judges, and
HALL, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

W. Michel Pierson, Baltimore, Maryland, for Appellant. John Henry
Lewin, Jr., Jeffrey P. Ayres, VENABLE, BAETJER, AND HOW-
ARD, L.L.P., Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

**OPINION**

PER CURIAM:

John J. Devan appeals the award of summary judgment to his former employer Barton-Cotton, Inc., on his claims under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a) (1994), and for breach of contract. Finding no error, we affirm the district court.

I.

In 1963, when he was eighteen, Devan was hired by Barton-Cotton as a "floor boy." He was regularly promoted and, subsequently, held the positions of Pressman, Estimator, Assistant to the President, and Plant Manager. In 1984, at the age of thirty-nine, he was promoted to Executive Vice President of Manufacturing, the job he held until he was terminated on March 23, 1994.

In 1985, Devan negotiated a lucrative compensation package with Richard C. Riggs, Jr., president and majority owner of Barton-Cotton, who had joined the company in 1974. The agreement provided that in future years Devan would receive one and one-half percent of all sales in excess of ten million dollars (the company's gross sales at the time). A memorandum was prepared memorializing the new arrangement, which provided that the additional compensation would be paid as soon as sales figures were available in January and that Devan would have the option of taking partial bonuses before January.

Sometime in 1990, Devan approached Don Tyrie, Barton-Cotton's Director of Finance, to request a withdrawal from his commission account. At around the same time, Barton-Cotton was in the process of changing its fiscal year from a June to a September fiscal year end. Tyrie requested that Devan withdraw substantially more than sales to date warranted, so that the commissions could be declared as expenses for that fiscal year. According to Devan, Tyrie essentially requested that Devan accept a payment in September 1990 reflecting one-half of the year's projected sales, even though the total sales through September did not support the sum. Also according to Devan,

2

he accepted Tyrie's offer and asserted that this payment effectively modified his salary agreement, such that should he ever leave Barton-Cotton early in a year, he would expect a pro rata portion of the commissions for that year. Devan admits that Tyrie's response was "I'm not authorized to change your contract. You should talk to Mr. Riggs about that." Devan never spoke to Riggs.

In 1993, relations between Riggs and Devan became strained. Devan began feeling that he was being excluded from meetings relating to production, planning, and forecasting and that he was being isolated in other ways. At around this same time, outside consultants were brought in to aid Barton-Cotton in expanding its business to focus more on marketing and sales, rather than production. Based partly on the consultants' conclusions, Barton-Cotton was reconfigured, and these changes resulted in substantial growth.

On March 22, 1994, Riggs advised Devan that he had hired a new employee, John Patterson, to oversee the operations of the company because Riggs was planning to expand the company exponentially. The following day, Riggs, who was fifty-four years old at the time, discharged Devan, who was forty-nine. Riggs informed Devan that the reason for the discharge was that Riggs had lost confidence in Devan's ability to lead the company into the future. Because Barton-Cotton's sales in March 1994 were less than $3.7 million, Devan was not paid a bonus for the 1994 year when he was terminated.

In April of 1994, Patterson, who was then forty-one, began working at Barton-Cotton in the position of Chief Operating Officer. This position included most of Devan's responsibilities, as well as duties in several additional areas, including purchasing, customer service, and information systems.

Devan sued Barton-Cotton in district court, claiming that Barton-Cotton had discharged him because of his age in violation of the ADEA and that Barton-Cotton had breached his compensation agreement by not paying him a pro rata share of commissions for the partial year he worked in 1994. The district court granted Barton-Cotton's motion for summary judgment, concluding that Devan had failed to establish a prima facie case of age discrimination and had

failed to establish that the original compensation agreement was modified. Devan appeals.

II.

Summary judgment is appropriate when there is no genuine issue of material fact that could lead a rational trier of fact to find for the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-49 (1986). "In determining whether to grant summary judgment, all justifiable inferences must be drawn in favor of the non-movant." Miltier v. Beorn, 896 F.2d 848, 852 (4th Cir. 1990) (citing Anderson, 477 U.S. at 255). We review a district court's decision to grant summary judgment de novo. See Foster v. American Home Prods. Corp., 29 F.3d 165, 168 (4th Cir. 1994).

On his ADEA claim, Devan relies upon the indirect, burden-shifting method of proof developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). See Lovelace v. Sherwin-Williams Co., 681 F.2d 230, 239 (4th Cir. 1982) (adopting McDonnell Douglas presumption framework in ADEA cases). If a plaintiff proceeds under the McDonnell Douglas framework, the case essentially breaks into three steps. First, the plaintiff must establish a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. Second, the defendant must respond with a nondiscriminatory reason for the termination. Id. Third, if the defendant responds with a legitimate nondiscriminatory reason, the "plaintiff must then bear the `ultimate burden of persuasion' and show by a preponderance of the evidence that the defendant's explanations are pretextual or otherwise unworthy of credence." Henson v. Liggett Group, Inc., 61 F.3d 270, 275 (4th Cir. 1995) (citations omitted).

To establish a prima facie case of discrimination, Devan must show that he (1) was a member of the protected group of persons within the ages of forty and seventy, (2) was subject to an adverse employment action, (3) that he was performing his job at a level that met his employer's legitimate expectations, and (4) that he was replaced by someone substantially younger and of comparable qualifications. See O'Connor v. Consolidated Coin Caterers Corp., ___ U.S. ___, 64 U.S.L.W. 4243, 4244 (U.S. Apr. 1, 1996) (No. 95-354). Here, we

4

agree with the district court that Devan made out the first three factors of a prima facie case.

III.

Regarding the fourth factor, Devan contends that he is not required to show that he possessed comparable qualifications to Patterson to make out a prima facie case. Devan asserts that the comparable qualifications requirement does not demand extensive comparison of qualifications, but rather one can satisfy this element with objective evidence of replacement by a younger person. Second, Devan argues that, even if there were a general requirement of comparable qualifications, it is inapplicable in this case where the decision to hire Patterson was made after the decision to terminate Devan. Finally, Devan asserts that the district court's determination that his qualifications were not comparable to Patterson's ignored undisputed facts of record.

Because Devan failed to offer any direct evidence of age discrimination, he is required to satisfy each and every prong of the McDonnell Douglas analysis.[1] We have recently reaffirmed the necessity of requiring a plaintiff to show, as part of the fourth prong of his prima facie case, that he was replaced by someone of comparable qualifications. See Blistein v. St. John's College, 74 F.3d 1459, 1467 n.7 (4th Cir. 1996) (specifically noting that previous opinion omitting this requirement was in error). While Devan asserts that this is a minor issue not justifying dismissal of his claim, we have previously and unambiguously found that "[w]hen the replacement employee has greater qualifications, an inference that the discharge was motivated by discrimination is simply not warranted." Id. (emphasis in the original).

Turning to Devan's claim that Patterson's qualifications are irrelevant because Patterson was hired after the decision was made to terminate Devan, we find this claim equally unavailing. Devan provides no support for the contention that the timing of the termination and

_____

[1] Direct evidence would generally consist of statements made by Riggs regarding Devan's age in connection with Devan's termination. See Moore v. City of Charlotte, 754 F.2d 1100, 1105 (4th Cir. 1985).

5

subsequent hiring are crucial, and we find that, in this case, the timing is not probative of discrimination. Riggs alleges that he decided to terminate Devan because Riggs felt Devan could not lead the company into the future. The fact that a replacement had not yet been found is irrelevant and, if anything, only undercuts Devan's claim that he was discriminated against. In any event, Devan is attempting to use this argument to deflect the real issue of whether he has submitted sufficient evidence to make a prima facie case. Because the fourth prong does not require that the decision to terminate and the hiring of a younger person with comparable qualifications be simultaneous or even close in time, the fact that no replacement was found immediately in time is not indicative of discrimination. **2**

Finally, Devan contends that the district court incorrectly found that his qualifications were not comparable to Patterson's. We disagree. Patterson has an undergraduate degree from Marquette University and a Masters in Business Administration from the University of Delaware. Devan was a high school graduate, without a college degree. In addition, Patterson was a former partner at Andersen Consulting, the largest consulting firm in the world, where he had significant experience in the design and implementation of large corporate restructuring projects. His previous work experience also included substantial customer service, sales and marketing, and integration of computer systems. In contrast, Devan worked exclusively at Barton-Cotton from his high school graduation, and his career focused on developing, cost-justifying, and enacting the latest technologies and methodologies in the manufacturing process, as well as overseeing the overall operation of the factory.

On this record, we find that Devan failed to present sufficient evidence to create a jury question as to whether he was comparably qualified to Patterson.**3** Because Devan cannot show that he has com-

_____

**2** In any event, contrary to Devan's assertions, Devan's termination and Patterson's hiring were completed at approximately the same time.
**3** Moreover, the undisputed evidence of record shows that Patterson's position is different from Devan's old position and that Devan was not qualified to occupy the newly reconfigured Chief Operating Officer position. On this point alone, Devan's attempt to satisfy the final element of

6

parable qualifications to Patterson, the district court properly found that he failed to present sufficient evidence to establish a prima facie case of age discrimination. Because Devan has failed to present a prima facie case, we do not address the district court's conclusions that Devan also failed to show that Barton-Cotton's proffered legitimate, nondiscriminatory reasons for its employment action were pretextual.

IV.

Devan's contract claim is premised upon a purported amendment to his written bonus agreement. Devan bases his modification argument upon a conversation with Tyrie, the financial and payroll manager. However, even accepting Devan's description of the conversation, Devan and Tyrie did not agree in that conversation to any pro rata bonus due to Devan, should he leave Barton-Cotton early in the year. Viewing the facts in the light most favorable to Devan, he and Tyrie at most agreed that, in 1990, Devan would be payed a pro rata bonus early in the year (to be corrected at a later time should sales not support this bonus), in order to implement a one-time accounting change.

Devan was expressly advised that Tyrie did not have the authority to alter Devan's contract. Nevertheless, Devan did not discuss the

_____

McDonnell Douglas's prima facie case of discrimination must fail. See Pace v. Southern Ry. Sys., 701 F.2d 1383, 1388 (11th Cir. 1983) (in absence of direct evidence or evidence that plaintiff was replaced, plaintiff must otherwise establish a nexus between age discrimination and the adverse employment action). Devan attempts to otherwise satisfy his burden by submitting evidence allegedly showing a pattern of discrimination. Having failed to place any of the statistical data within a relevant framework or to present evidence allowing this court to construct the framework in which the evidence proffered by Devan would be relevant, we affirm the district court's holding that the statistical data failed to show a pattern of discrimination. We also hold that the age-related statements attributed to Riggs by Devan are neither numerous nor egregious enough to be probative of age discrimination. See Henson, 61 F.3d at 276. ("isolated remote statements are not probative of age discrimination").

7

proposed modification with Riggs. Moreover, it is undisputed that, after 1990, Devan's bonus was administered according to the express terms of the written contract. We, therefore, find that Devan produced no evidence that Barton-Cotton intended to modify his contract and that the isolated conduct that Devan relies on is insufficient to raise an inference of acquiescence.

V.

The district court's award of summary judgment to Barton-Cotton is, therefore, affirmed. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

8