**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CADY SHIREY, by her parents and
next friends, Timothy B. and
Katherine Ann Kyger; TIMOTHY B.
KYGER; KATHERINE ANN KYGER,

    Plaintiffs-Appellants,

v.

CITY OF ALEXANDRIA SCHOOL BOARD,
Defendant-Appellee.

No. 99-1127

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
James C. Cacheris, Senior District Judge.
(CA-98-313-A)

Argued: May 2, 2000

Decided: August 23, 2000

Before WIDENER, MURNAGHAN, and NIEMEYER,
Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Patricia Ann Smith, Alexandria, Virginia, for Appellants.
William Michael Holm, REDMON, BOYKIN & BRASWELL,
L.L.P., Alexandria, Virginia, for Appellee. **ON BRIEF:** E. Andrew
Burcher, REDMON, BOYKIN & BRASWELL, L.L.P., Alexandria,
Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Cady Shirey, her mother Katherine Kyger, and her step father Tim Kyger ("Plaintiffs") sued the City of Alexandria School Board (the "School Board") alleging violations of Section 504 of the Rehabilitation Act of 1973 and Title II of the Americans with Disabilities Act. The Plaintiffs' complaint is based on two incidents involving the emergency evacuation of school buildings. Plaintiffs contend that the School Board's alleged failure to develop and implement effective procedures for the safe evacuation of disabled children amounts to discrimination in violation of federal law. Because we agree with the District Court that there are no genuine issues of material fact and that the School Board is entitled to judgment as a matter of law, we affirm the order granting Defendant's motion for summary judgment.

I.

Cady Shirey is a public school student in Alexandria, Virginia. Cady suffers from a form of dwarfism that limits her strength, endurance, and mobility. The School Board has provided Cady with accommodations to promote her full participation in school activities, including computers and special voice recognition software, a modified academic program, ramps and a motorized wheelchair, and a full-time aide assigned exclusively to assist Cady in a variety of tasks.

In 1996, Cady was a student at G.W. Middle School, part of the Alexandria City Public School System. In April of that year, Cady's school was evacuated because of a bomb threat. Cady, along with a responsible adult and another disabled child, was left in the otherwise evacuated building for approximately seventy minutes. Although no bomb was ever discovered in the school, the incident was a source of great concern for Cady's parents, and left Cady feeling angry and upset.

2

Shortly after the bomb-threat incident, Cady's parents filed a complaint with the Office of Civil Rights ("OCR") of the Department of Education. The complaint alleged that the School Board discriminated against Cady on the basis of her disability by failing to evacuate her from the school during the bomb-threat incident. The Kygers and the School Board eventually agreed to mediation as part of an "Early Resolution" procedure; and as a result of that mediation, an Agreement dated November 12, 1996 was reached and signed by, among others, Cady's mother - Katherine Kyger.

Under the OCR Agreement, Cady's parents agreed to drop their pending OCR complaint against the School Board in exchange for the School Board's agreement to adopt a new Emergency Preparedness Plan. The Agreement expressly provided that all of Mrs. Kyger's concerns listed in the OCR complaint had been addressed.

The School Board did in fact develop a new Emergency Plan for disabled students, with input from Cady's parents. The new plan included a procedure whereby, in the event of an emergency, Cady and other disabled students would be sent to a designated "safe room." A responsible adult and an alternate were designated for each safe room, where a special flag and a cellular phone were placed to facilitate communication with school and emergency officials. If actual evacuation were necessary, emergency personnel would rescue the children directly from the identified safe rooms.

The new plan was instituted by the School Board in January of 1997. The principal held a meeting to explain the new procedure to students and teachers who would be affected, and a practice drill was successfully run.

On March 6, 1997, an unscheduled fire alarm went off in the school Cady attended. Cady went to the library, which was a designated "safe room." While the other students evacuated the building, Cady was left alone. The librarian, who was originally designated as the responsible adult for the library safe room, left with the non-disabled students, while the alternate responsible adult, a guidance counselor, was en route to the library.[1] Before the alternate arrived

_____

[1] The librarian received permission from school administrators to be relieved, for personal reasons, of her safe room responsibilities during an emergency evacuation.

3

and the all-clear bell sounded, but after the librarian and the non-disabled students left the library, Cady was left alone for approximately two minutes. At that point, however, Cady's math teacher came to check on her, and -- finding her alone-- stayed with the child for the duration of the incident.

Plaintiffs filed a complaint in federal court in March of 1998. They alleged disability discrimination in violation of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, based on the two incidents in which Cady was left in a school building during an emergency evacuation, as well as alleged defects in the revised emergency plan developed by the School Board. Plaintiffs asked for injunctive relief requiring the school to provide adequate evacuation procedures, as well as compensatory and punitive damages for the harm these incidents allegedly caused Cady.

The School Board filed an answer and a motion to dismiss, which was denied. After discovery, the School Board filed a motion for summary judgment. The District Court found that those portions of the claim relating to the bomb-threat incident were barred by the doctrines of accord and satisfaction, based on the Agreement settling the OCR complaint, and also that Plaintiffs failed to muster any evidence of bad faith or gross misjudgment by the School Board, the standard used by the District Court for finding liability under both the Rehabilitation Act and the ADA. Defendant's motion for summary judgment was therefore granted and the complaint was dismissed.

Plaintiffs then filed a Rule 59(e) motion for reconsideration of the summary judgment order. The District Court denied the motion since it raised new arguments which could have been presented in opposition to the motion for summary judgment. Plaintiffs brought this appeal challenging both the denial of their Rule 59(e) motion and the order granting Defendant's motion for summary judgment.

II.

The denial of a Rule 59(e) motion is reviewed only for an abuse of discretion. Collison v. International Chemical Workers Union, 34 F.3d 233, 236 (4th Cir. 1994). A motion to alter a judgment pursuant

4

to Rule 59(e) should only be granted (1) to accommodate an intervening change in controlling law, (2) to account for new evidence not available at trial, or (3) to correct a clear error of law or prevent manifest injustice. Id. Moreover, Rule 59(e) motions may not be used to raise arguments which could have been raised before the judgment was issued or to argue the case under a new legal theory. Pacific Ins. Co. v. American Nat. Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998).

The District Court correctly denied Plaintiffs' motion. All of the arguments contained in the Rule 59(e) motion could have been presented to the court in opposition to the motion for summary judgment, but were not. Because Plaintiffs based their motion for reconsideration on arguments raised for the first time after final judgment was issued, the District Court properly denied the motion. Plaintiffs were merely trying to reargue the same matters decided at the summary judgment stage, and the District Court acted well within its discretion by denying their attempt to do so. We therefore affirm the denial of Plaintiffs' Rule 59(e) motion for reconsideration.

III.

We review an order granting a motion for summary judgment de novo. Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995). Summary judgment is appropriate only if there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Fed. R. Civ. P. 56(c). We agree with the District Court that the School Board is entitled to summary judgment, and therefore affirm the order entered below. We disagree, however, with the reasoning relied upon by the District Court, and will therefore affirm on alternative grounds. See Ross v. Communications Satellite Corp., 759 F.2d 355, 363 (4th Cir. 1985).

A.

The District Court found that Plaintiffs were barred from raising any claims arising out of the April, 1996 bomb-threat incident based on the doctrines of accord and satisfaction. The District Court reasoned that since the OCR Agreement indicated that all of Mrs. Kyger's concerns raised in the OCR complaint, including those

5

related to the bomb-threat incident, were addressed, and since Mrs. Kyger knowingly and voluntarily signed the Agreement, Plaintiffs' claims arising from that incident were in effect "settled." The District Court found that the OCR Agreement was an accord, and the School District's execution of that Agreement served as satisfaction of the matter.

The right to file a disability discrimination claim under the Rehabilitation Act and the ADA is a statutory right created by Congress. The OCR Agreement cannot bar the instant federal claim unless that agreement contains a knowing and intelligent waiver of the Plaintiffs' right to bring such a claim. See Alexander v. Gardner-Denver Co., 415 U.S. 36, 52 & n. 15 (1974). We have carefully examined the OCR Agreement signed by the School Board and Mrs. Kyger, and in it we find no mention of a waiver or release of any rights or claims under federal discrimination laws. Although Mrs. Kyger agreed that "all of her concerns in her complaint to OCR . . . have been addressed," she did not agree to waive or release her statutory right to file a federal discrimination claim under the Rehabilitation Act or the ADA. We do not think a general statement that "all concerns have been addressed" is sufficient to waive or release an important federal remedial right.

Thus, although Mrs. Kyger accepted the OCR Agreement knowingly, there was nothing in that agreement which amounts to a waiver of her federal claims. We therefore cannot agree with the District Court's conclusion that any of Plaintiffs' claims emanating from the allegations contained in the OCR Complaint and Agreement (including the bomb-threat incident) are barred. Accordingly, we will consider Plaintiffs' claims in light of both the bomb-threat incident and the false fire alarm incident.

B.

Both the Rehabilitation Act and the ADA prohibit discrimination on the basis of disability. The Rehabilitation Act provides:

> No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be sub-

6

jected to discrimination under any program or activity receiving Federal financial assistance . . . .

29 U.S.C. § 794(a). Building on the prohibitions contained in the Rehabilitation Act, the Americans with Disabilities Act was later enacted "to provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1). Title II of the ADA, which applies to public entities, including public schools, states in relevant part:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity or be subjected to discrimination by any such entity.

Id. § 12132.

Because the language and purpose of both Acts is substantially the same, the same analysis applies to claims brought under both statutes. Doe v. University of Md. Med. Sys. Corp., 50 F.3d 1261, 1264 n.9 (4th Cir. 1995). To establish a violation of either statute, a plaintiff must prove: (1) that she has a disability; (2) that she is otherwise qualified for the benefit or program in question, and (3) that she was excluded from the benefit or program due to discrimination solely on the basis of the disability. Id. at 1265. The real question in this case is whether Cady was excluded from a benefit or program due to disability discrimination.

The District Court relied on this court's recent articulation of what constitutes disability discrimination in Sellers v. School Bd. of Manassas, 141 F.3d 524 (4th Cir. 1998). In Sellers we held that "either bad faith or gross misjudgment should be shown before a § 504 violation can be made out, at least in the context of education of handicapped children." Id. at 529 (quoting Monahan v. Nebraska, 687 F.2d 1164, 1171 (8th Cir. 1982)).

We do not think the heightened Sellers standard is applicable here. In one sense, this case does deal with the education of handicapped

children, insofar as the activities in question take place in a school and are directed at disabled children. The "context" referred to in Sellers, however, dealt specifically with the development of appropriate Individualized Education Plans (IEP's) for disabled children, a process in which "[e]xperts often disagree" and which "is often necessarily an arguable matter." Id. (quoting Monahan, 687 F.2d at 1170). Because negligent error in the development of an appropriate IEP does not amount to the kind of invidious discrimination at which the Rehabilitation Act or the ADA is directed, we adopted the heightened standard of "bad faith or gross misjudgment" for proving discrimination in the specific context of developing appropriate IEP's for disabled children.

The instant case does not involve the development of an appropriate IEP for Cady. There is nothing "arguable" about safely evacuating disabled children from a school building during an emergency, and we doubt there are any "experts" who would disagree about the need to do so. Thus, the Sellers standard is not the appropriate test for liability in this case. Rather, we think that this case presents a situation more analogous to cases in which physical barriers to public programs or services are challenged. See, e.g., Tyler v. City of Manhattan, 118 F.3d 1400 (10th Cir. 1997); Campos v. San Francisco State University, 1999 WL 1201809 (N.D. Cal. 1999); Schonfeld v. City of Carlsbad, 978 F. Supp. 1329 (S.D. Cal. 1997). Using this analogy, the correct inquiry is simply whether the School Board's actions have denied Cady and other disabled students access to the program in question--namely, safe evacuation from school buildings during an emergency.

C.

To establish a violation of either Act, therefore, Plaintiffs must prove that Cady was excluded from safe evacuation procedures during an emergency. As to the false fire alarm incident in March of 1997, based on the undisputed facts, we think it is clear that Cady was not excluded from safe evacuation procedures. The School Board developed and implemented a revised Emergency Preparedness Plan to safely evacuate disabled children, with the advice of local fire and police officials. School administrators held a meeting with the people involved in executing the new procedures, including students and

8

staff, and explained how the new plan would work. Flags and cell phones were placed in the designated safe rooms, and a drill was successfully run. Accordingly, there is no liability under either Act as to the March, 1997 incident and summary judgment was properly granted in favor of the School Board in reference to those events.**2**

As to the bomb-threat incident in April, 1996, however, the undisputed facts demonstrate that Cady was excluded from safe evacuation procedures. At that time, the School Board had no reasonable plan in place to evacuate disabled children from school buildings during an emergency. Therefore, we find that the School Board did in fact discriminate against Cady based on her disability by excluding her from safe evacuation procedures during the bomb-threat incident in April of 1996.

Having concluded that the School Board is liable for disability discrimination that occurred in April of 1996, due to its failure to develop a reasonable evacuation plan for disabled children, we must next consider whether this violation of the Acts requires any further remedy. Given the nature of the violation in this case, we think it is clear that the appropriate remedy would be injunctive relief requiring the School Board to develop and implement a reasonable evacuation plan for disabled children. See Layton v. Elder , 143 F.3d 469 (8th Cir. 1998). However, because the School Board has already developed and implemented a reasonable emergency evacuation plan, we find that no further relief is warranted. Accordingly, on this alternate basis we affirm the District Court's order granting summary judgment to the School Board in reference to the events of April, 1996.

Our conclusion that the appropriate remedy in this case is limited to corrective injunctive relief is confirmed by the OCR Agreement

_____

**2** Plaintiffs argue strenuously that the two minutes during which Cady was left alone in the library during the March, 1997 false fire alarm, along with other alleged defects in the School's Emergency Plan, constitute discrimination under the Acts. While we are sympathetic to the child's distress during the confusion of a fire alarm, we cannot agree that imperfect execution of an otherwise reasonable evacuation plan constitutes disability discrimination. Minor errors in carrying out the evacuation plan are not a sufficient basis for a discrimination claim.

reached by the parties. Although the OCR Agreement did not contain an explicit waiver of Mrs. Kyger's federal cause of action under the Acts, it did address the "concerns" which grew out of the events of April, 1996. Mrs. Kyger herself agreed that the development and implementation of a revised Emergency Plan would "address all of her concerns." Clearly, the remedy sought by the Plaintiffs in pursuing their complaint through administrative channels was limited to corrective injunctive relief. Therefore, on the facts of this particular case, we find that no further relief is warranted.

IV.

The District Court properly granted summary judgment in favor of the School Board. Plaintiffs have demonstrated a violation of the Acts only in regard to the bomb-threat incident in April of 1996, and, given the subsequent development of a reasonable evacuation plan for disabled children, no further relief is warranted. The orders denying Plaintiffs' Rule 59(e) motion for reconsideration and granting summary judgment in favor of the School Board are therefore

AFFIRMED.

10